**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Douglas Wayne Derello, Jr., | No. CV 17-01909-PHX-DGC (JFM) |
| Plaintiff, | |
| vs. | **ORDER** |
| Paul Penzone, et al., | |
| Defendants. | |

Plaintiff Douglass Wayne Derello, Jr., who is confined in the Arizona State Prison Complex-Eyman Special Management Unit I, in Florence, Arizona, brought this pro se civil rights action under 42 U.S.C. § 1983 against Maricopa County Jail detention officers M. Brennan, Mark Despaine, and Noe Godoy, and nurse Edmay Ray. (Doc. 31.) Before the Court are Defendants' Motion for Summary Judgment based on the failure to exhaust administrative remedies and Derello's Cross-Motion for Partial Summary Judgment. (Docs. 48, 59). The Court will deny Defendants' Motion and grant Derello's Cross-Motion as to the issue of exhaustion.

## I. Background

Derello's claims arose during his confinement in the Lower Buckeye Jail, where he was housed periodically from 2012 through 2017. (Doc. 31 at 1; Doc. 59 at 3.) During this time, Derello was moved back and forth between the Arizona State Prison Complex and the jail for short stays due to medical reasons and for court hearings. (Doc. 59 at 3 & Ex. 3(C) (Doc. 59 at 21).) In Count One of his Second Amended Complaint, Derello

alleged that Brennan, Despaine, and Godoy retaliated against him for filing lawsuits and grievances by searching his cell and seizing and destroying his property. (*Id.* at 5–7.) In Counts Two and Three, Derello set forth a medical care claim and a retaliation claim against Ray based on her alleged denial of adequate treatment for Derello's serious medical needs and her confiscation of his prescribed medication. (*Id.*) Upon screening, the Court ordered these four Defendants to respond to the claims in Counts One, Two, and Three, and dismissed Sheriff Paul Penzone and Jail Commander John Doe as Defendants. (Docs. 32–33.)

Defendants move for summary judgment on the ground the Derello failed to exhaust administrative remedies as required under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). (Doc. 48.)[1] Derello filed a combined Response and Cross-Motion for Partial Summary Judgment. (Doc. 59.)[2] Derello requests that the Court either stay a ruling on Defendants' Motion or grant Derello summary judgment. (*Id.* at 11.)

**II.    Summary Judgment Standard**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

---

[1] Defendants introduce their Motion as being brought by Defendant Penzone. (Doc. 48 at 1.) Then, in a footnote, Defendants acknowledge that Penzone was dismissed at screening, and they assert that the Motion is filed on behalf of Godoy and Brennan, but that the Motion's exhaustion arguments apply to all Defendants. (*Id.* at 3 n.1.) The docket shows that Despaine and Ray were served after the filing of Defendants' Motion; however, Despaine and Ray are represented by the same counsel as Godoy and Brennan. (Docs. 82, 88, 93–94.)

[2] The Court issued a Notice required under *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc), which informed Derello of his obligation to respond and the requirements under Federal Rule of Civil Procedure 56. (Doc. 50.)

1    If the movant fails to carry its initial burden of production, the nonmovant need not

2    produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099,

3    1102–03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts

4    to the nonmovant to demonstrate the existence of a factual dispute and that the fact in

5    contention is material (a fact that might affect the outcome of the suit under the governing

6    law) and that the dispute is genuine (the evidence is such that a reasonable jury could return

7    a verdict for the nonmovant). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250

8    (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The

9    nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l*

10   *Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968), but it must "come forward

11   with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus.*

12   *Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see*

13   Fed. R. Civ. P. 56(c)(1).

14       At summary judgment, the judge's function is not to weigh the evidence and

15   determine the truth, but to determine whether there is a genuine issue for trial. *Anderson*,

16   477 U.S. at 249. In its analysis, the court does not make credibility determinations. It must

17   believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at

18   255; *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). The court need

19   consider only the cited materials, but it may consider any other materials in the record.

20   Fed. R. Civ. P. 56(c)(3).

21   **III.    Exhaustion**

22       **A.    Legal Standard**

23       Under the PLRA, a prisoner must exhaust "available" administrative remedies

24   before filing an action in federal court. *See* 42 U.S.C. § 1997e(a); *Vaden v. Summerhill*,

25   449 F.3d 1047, 1050 (9th Cir. 2006); *Brown v. Valoff*, 422 F.3d 926, 934–35 (9th Cir.

26   2005). The prisoner must complete the administrative review process in accordance with

27   the applicable rules. *See Woodford v. Ngo*, 548 U.S. 81, 92 (2006). Exhaustion is required

28   for all suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 523 (2002), regardless of the

type of relief offered through the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

Where a defendant asserts nonexhaustion, he bears the initial burden to show that there was an available administrative remedy and that the prisoner did not exhaust it. *Albino v. Baca*, 747 F.3d 1162, 1169, 1172 (9th Cir. 2014); *see Brown*, 422 F.3d at 936–37 (a defendant must demonstrate that applicable relief remained available in the grievance process). Once that showing is made, the burden shifts to the prisoner, who must either demonstrate that he in fact exhausted administrative remedies, or "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. The ultimate burden, however, rests with the defendant. *Id.* Summary judgment is appropriate if the undisputed evidence, viewed in the light most favorable to the prisoner, shows a failure to exhaust. *Id.* at 1166, 1168; *see* Fed. R. Civ. P. 56(a).

If summary judgment is denied, disputed factual questions relevant to exhaustion should be decided by the judge. A plaintiff is not entitled to a jury trial on the issue of exhaustion. *Albino*, 747 F.3d at 1170–71. But if a court finds that the prisoner exhausted administrative remedies, that administrative remedies were not available, or that the failure to exhaust administrative remedies should be excused, the case proceeds to the merits. *Id.* at 1171.

### B.      Discussion

#### 1.      Maricopa County Jail Grievance Procedure

The jail's grievance process is set forth in Maricopa County Sheriff's Office (MCSO) Policy DJ-3, *Inmate Grievance Procedure*, and the grievance process is described to prisoners in the *MSCO Rules and Regulation for Inmates*. (Doc. 49, Exs. 2–3.) The first step in the jail's grievance process requires a prisoner to ask an officer for a grievance form, complete the form and include a proposed resolution, and submit the completed form to an officer. (*Id.*, Ex. 3 at 18–19 (Doc. 49-1 at 38–39).) If the officer cannot resolve the issue within seven working days, the officer forwards the grievance to the shift supervisor for

1    review.  (*Id.* at 19.)  If the shift supervisor cannot resolve the issue, the grievance is

2    forwarded to the Hearing Unit sergeant as a formal complaint.  (*Id.*)  If the Hearing Unit

3    sergeant cannot resolve the issue or if the prisoner does not receive a response, he may file

4    an Institutional Grievance Appeal with the jail commander.  (*Id.*)  The jail commander will

5    respond to the Institutional Grievance Appeal within seven working days.  (*Id.*)  If the issue

6    is still not resolved, the prisoner may file an External Grievance Appeal to the External

7    Referee.  (*Id.*)

8           The MCSO grievance policy provides that if a failure to act promptly in response to

9    a complaint or grievance may result in harm or threaten the safety or security of the jail, a

10   prisoner may file a "Grievance of an Emergency Nature," and the shift supervisor must

11   take immediate action.  (*id.*, Ex. 2 at 2.)

12          The MCSO grievance policy also provides that if a prisoner alleges that he has not

13   received prompt redress or that there is a practice or pattern of not receiving proper redress

14   to his complaints, the Bureau Hearing Unit commander and the jail commander may

15   consider using the Direct Supervised Grievance Protocol.  (*Id.* at 20 (Doc. 49-1 at 40).)  If

16   the Direct Supervised Grievance Protocol is initiated, a shift supervisor and hearing

17   sergeant are assigned to meet with the prisoner at least every other day to ensure that the

18   prisoner has an opportunity to communicate his complaints, and the officials will provide

19   the prisoner with grievance forms.  (*Id.*)  The officials will discuss any grievance with the

20   prisoner, and the assigned supervisor or hearing sergeant will determine whether the

21   grievance can be processed through the standard grievance procedure.  (*Id.* at 19–20.)

22          **2.      Defendants' Motion**

23          As stated, Defendants must demonstrate that there was an administrative remedy

24   available and Derello did not exhaust it.  *See Albino*, 747 F.3d at 1169, 1172.  Defendants

25   submit the declaration of Brandon Smith, the Bureau Hearing Unit Commander.  (Doc. 49,

26   Ex. 1, Smith Decl. ¶ 1.)  Smith avers that he searched the MCSO's grievance records and

27   found that during Derello's confinement at the jail from October 2016 through June 2017,

28   Derello submitted five grievances, and that none of those grievances relate to the

allegations in Derello's Second Amended Complaint.  (*Id.* ¶¶ 8–10.)  Defendants do not provide copies of Derello's grievances.   Instead, they submit the copy of an ADC computer-generated grievance report that lists grievances filed by Derello on October 15, October 16, October 20, October 30, and November 1, 2016.  (*Id.*, Ex. 5 (Doc. 49-1 at 69).)  This report identifies the subject of each grievance: (1) time in dayroom; (2) distribution of medication; (3) water for a medical machine; (4) housing to accommodate medical equipment; and (5) lack of television in the dayroom.  (*Id.*)  There is no indication of the level within the grievance process that each of these complaints reached – formal complaint, Institutional Grievance Appeal, or External Grievance Appeal.  (*See id.*)  Defendants contend that none of the grievances relate to the claims in this lawsuit and that Derello provided no explanation for his failure to exhaust.  (Doc. 48 at 8–9.)  For these reasons, Defendants maintain that the action should be dismissed for failure to exhaust.  (*Id.* at 4, 8–9.)

### 3.      Derello's Response

Derello asserts that the grievance procedure at the jail was rendered unavailable to him. (Doc. 31 at 5, 8; Doc. 59 at 4.)  *See Albino*, 747 F.3d at 1172.  He also asserts that the five grievances listed by Defendants are not the entire record of grievances and appeals he submitted during his confinement at the Jail.  (Doc. 59 at 4.)   For example, Derello refers to a grievance that he filed on November 19, 2016, against Officer Acosta, but this grievance is not listed on Defendants' report.  (*Id.* at 8.)

In his attached declaration, Derello avers that many of his grievances and Inmate Request Forms were destroyed or torn up in front of him by MCSO staff.  (Doc. 59, Derello Decl. ¶ 4.)  Derello states that both Brennan and Godoy tore up his grievances.  (Doc. 59 at 6, 9.)  Derello submits the copy of a February 5, 2016 grievance, which is dated and signed as received by Brennan.  (Doc. 59, Ex. 4 (Doc. 59 at 23).)  In this grievance, Derello wrote that he was denied copies of a grievance appeal response.  (*Id.*)  This grievance is not listed on Defendants' report.  Derello states that he submitted this grievance to Brennan, who then tore it up.  (*Id.*; Doc. 59 at 4.)

1    Derello alleges that he submitted numerous written requests for help with his
2    complaints and he specifically requested to be placed under the Direct Supervised
3    Grievance Protocol, to no avail.  (Doc. 59 at 5.)  Derello submits a copy of a November 4,
4    2016 Inmate Request Form submitted to the jail commander, in which Derello wrote "I am
5    request[ing] to be placed under the Direct Supervised Grievance Process" for the following
6    reasons: "today by all three shifts my request for institutional appeal forms was denied";
7    the hearing officer does not carry any appeal forms; and the floor officers claim that the
8    forms are hard to find.  (Doc. 59, Ex. 6 (Doc. 59 at 27).)

9        Derello specifically alleges that in mid-November 2016, Godoy told him that if he
10   filed a grievance, he will only be hurting himself.  (Doc. 31 at 5.)  Nonetheless, on
11   November 26, 2016, Derello submitted another Inmate Request Form to the jail
12   commander requesting "Direct Supervised Grievance Protection" because Godoy searched
13   his cell that day and took legal papers, and when Derello sought assistance from a sergeant,
14   he was told to talk to Godoy, who told Derello to "cry to the court." (*Id.*, Ex. 3(B) (Doc.
15   59 at 20).)  The evidence also includes Derello's December 14, 2016 Inmate Request Form,
16   which sought assistance from Sergeant Rosales for his complaint about Godoy's targeted
17   cell searches.  (*Id.*, Ex. 3(C) (Doc. 59 at 21).)  A week later, on December 22, 2016, Derello
18   wrote another Inmate Request Form to the jail commander explaining that the sergeant has
19   not helped him at all, that the retaliation is getting worse, that Godoy tore up Derello's
20   grievance, that Derello was forced to give up his medication, and that Derello needs Direct
21   Supervised Grievance Protection.  (*Id.*, Ex. 3(A) (Doc. 59 at 19).)

22       Derello also submits the copy of an April 30, 2017 Inmate Request Form to the jail
23   commander stating that Despaine and Brennan searched his cell while he was at a medical
24   appointment and his medical CPAP mask was damaged and legal property is missing.
25   (Doc. 59, Ex. 6 (Doc. 59 at 32).)  Derello wrote "I have been pleading with you for months
26   to look into the harassment against me and how the grievance process has been made
27   unavailable to me, and you have not helped me." (*Id.*)  Derello states that the jail
28   commander never responded to any of his Inmate Request Forms.  (Doc. 59 at 9; Doc. 60

¶ 4.)

Finally, Derello states that he twice attempted to file a "Grievance of an Emergency Nature" as provided for under the grievance procedure, but the jail commander did not respond. (Doc. 59 at 5, 9.) Derello contends that in light of this evidence, as well as Defendants' failure to present his entire grievance record, Defendants have failed to carry their burden to establish that administrative remedies were available to him. (*Id.* at 11.)

### 4.    Analysis

Exhaustion is not required when circumstances render administrative remedies "effectively unavailable." *Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010); *see Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir. 2010). The Ninth Circuit has held that a prisoner is excused from the exhaustion requirement where he does not have access to the necessary grievance forms. *Marella v. Terhune*, 568 F.3d 1024, 1027–28 (9th Cir. 2009) (per curiam); *see Albino*, 747 F.3d at 1173 (noting that a remedy may be unavailable if the prisoner "did not have access to the necessary grievance forms within the prison's time limits for filing a grievance"). In addition, if prison officials use misrepresentation or intimidation to prevent prisoners from using a grievance process, such interference renders the administrative process unavailable. *Ross v. Blake*, 136 S. Ct. 1850, 1860 (2016). And a prison official's threats can render the prison's grievance system unavailable if the prisoner actually believed the prison official would retaliate against him if he filed a grievance and if that belief was objectively reasonable. *McBride v. Lopez*, 807 F.3d 982, 988 (9th Cir. 2015).

The facts show that officers did not provide grievance forms upon request, that jail officers tore up Derello's grievances, and that Derello notified jail officials in writing of these problems. The evidence also shows that Derello specifically requested to be placed under the Direct Supervised Grievance Protocol due to these problems and a practice of not receiving proper redress to his complaints. Every grievance document and Inmate Request Form Derello submitted is signed and dated by an officer, thereby documenting receipt by jail officials. (*See* Doc. 59, Exs. 3–4, 6.) But jail officials did not respond to

1   Derello's concerns, nor did they respond to his requests to participate in the Direct
2   Supervised Grievance Protocol. In their Reply, Defendants maintain that the Inmate
3   Request Forms do not constitute the required grievance forms and do not support an
4   attempt to exhaust. (Doc. 67 at 4.) But Defendants do not indicate how Derello was
5   supposed to communicate with jail officials if officers would not provide him grievance
6   forms. Defendants also assert that, rather than seeking to use the Direct Supervised
7   Grievance Protocol, Derello should have taken the "simple next step" of submitting a
8   written formal grievance about the alleged failures of officials to respond. (*Id.* at 5.)
9   Defendants' stance is untenable given unrefuted evidence that Godoy and Brennan tore up
10  Derello's grievances, Derello's emergency grievances were ignored, and officers did not
11  provide grievance forms.

12          Defendants make the general assertion that "[MCSO] records show that at no time
13  during Derello's incarceration did [the jail] make administrative remedies 'unavailable' for
14  the jail population generally or against inmate Derello specifically." (Doc. 49, Ex. A,
15  Smith Decl. ¶ 13; Doc. 48 at 4.) But they do not cite to any MCSO records to support this
16  statement. (*See id.*) Defendants wholly fail to show that Derello had any available
17  administrative remedy after officers refused to provide him grievance forms upon request,
18  tore up his grievances, and ignored his requests for assistance with the grievance process.
19  There is nothing in MCSO Policy DJ-3 or the *MCSO Rules and Regulations for Inmates*
20  that informs a prisoner of what steps to take to grieve an issue in such a situation. *See*
21  *Brown*, 422 F.3d at 936–37 (evidence to show that remedies are available include official
22  directives that explain the scope of the administrative review process and information
23  provided to the prisoner concerning the grievance procedure operation). In these particular
24  circumstances, where Derello was denied grievance forms and jail officials provided no
25  information to Derello as to how to grieve his issues, even after his requests for assistance,
26  it was reasonable for Derello to believe that administrative remedies were effectively
27  unavailable. *Cf. Sapp*, 623 F.3d at 826 (finding that the prisoner could have no reasonable
28  belief that administrative remedies were effectively unavailable where the prison's

administrative appeals coordinator responded to the prisoner's appeal, specifically instructed him on how to seek the desired medical care and instructed him on how to appeal any denial of care, but the prisoner did not follow those instructions). On this record, Defendants fail to satisfy their burden to show that administrative remedies were available to Derello, and their Motion for Summary Judgment will be denied.

Defendants had a full and fair opportunity to develop and present evidence on the issue of exhaustion. Despite Derello's specific allegations and facts showing that Brennan and Godoy tore up grievances, that Derello was denied grievance forms by officers, and that that his written requests for assistance and use of the Direct Supervised Grievance Protocol were ignored, Defendants did not present any counter evidence—such as declarations from Brennan, Godoy, and floor officers who worked in Derello's housing unit—to establish a triable issue regarding the availability of administrative remedies. The Court will therefore grant summary judgment to Derello on the issue of exhaustion. *See Albino*, 747 F. 3d at 1176 (stating that where a defendant moves for summary judgment based on failure to exhaust under the PLRA and has failed to show a genuine dispute of fact on the issue of exhaustion, it is appropriate for the court to grant summary judgment sua sponte for the nonmovant on the issue).

**IT IS ORDERED:**

(1)     The reference to the Magistrate Judge is withdrawn as to Defendants' Motion for Summary Judgment (Doc. 48) and Plaintiff's Cross-Motion for Partial Summary Judgment (Doc. 59).

(2)     Defendants' Motion for Summary Judgment (Doc. 48) is **denied**.

(3)     Plaintiff's Cross-Motion for Partial Summary Judgment (Doc. 59) is **granted** as to the issue of exhaustion.

Dated this 1st day of August, 2019.

David G. Campbell
Senior United States District Judge